UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURT RENFRO,
WILLIAM SOUTHWORTH,
RICHARD PETERSON, and
JAMES FITCHUK, individually
and as Class Representatives on
behalf of other persons similarly
situated,

    Plaintiffs,                                                                         Case No. 1:99-cv-877

v                                                                                            Hon. Wendell A. Miles

INDIANA MICHIGAN POWER
COMPANY,
d/b/a AMERICAN ELECTRIC POWER,

    Defendant.
_____/

FINDINGS OF FACT AND CONCLUSIONS OF LAW

       The plaintiffs in this action are persons who are or were employed by the defendant, Indiana Michigan Power Company, d/b/a American Electric Power ("AEP"). In their complaint, plaintiffs have alleged that AEP violated the overtime pay provisions of the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. §§ 201 *et seq.* by inappropriately classifying them as "exempt" from the Act. On January 25, 2005, the court issued an order granting summary judgment in the remaining plaintiffs' favor on the issue of AEP's liability for violation of the FLSA, ruling that these plaintiffs had been improperly classified as exempt.

       The parties were subsequently able reach a stipulation regarding the amount of overtime pay owed to the technical writers. The issue of the technical writers' entitlement to liquidated damages was tried before the court sitting without a jury over a two-day period beginning on

November 29, 2005 and concluding on December 1, 2005.   The case is ripe for decision.

## FINDINGS OF FACT

1.  AEP is an electrical power company headquartered in Columbus, Ohio.  AEP owns and operates a number of subsidiary companies, including Indiana Michigan Power Company, headquartered in Fort Wayne, Indiana.  Through its subsidiary Indiana Michigan Power Company, AEP owns and operates the Donald C. Cook Nuclear Plant (the "plant" or the "Cook plant") located in Bridgman, Michigan.  The Cook plant is a nuclear powered electrical generating station providing power to customers in Michigan, Indiana, and other locations.

2.  Plaintiffs William Southworth, Lloyd Dopp, Robert Piehl, Edward Jones and Steven Hoepner are or were, at all times relevant to this action, employed by AEP at the Cook plant.

3.  Plaintiffs William Southworth, Lloyd Dopp, Edward Jones, and Steven Hoepner have, at all times relevant to this action, worked as a technical writers in the maintenance department at the Cook plant.

4.  As technical writers, plaintiffs are or were generally responsible for writing procedures relating to the planning and performance of maintenance work on equipment at the Cook plant.

5.  Edward Jones is no longer employed by AEP.  In May, 2001, AEP changed Dopp's job title to "nuclear specialist."  However, Dopp continues to perform the same duties he performed while he was a technical writer.

6.  Plaintiff Barbara Hoepner is the widow and personal representative of the estate of plaintiff Steven Hoepner, who is now deceased.

7. Plaintiff Robert Piehl is not a technical writer, but performs or has performed a variety of tasks relating to procedure writing and condition reports. Unless otherwise stated herein, for purposes of these Findings of Fact and Conclusions of Law, the terms "plaintiffs" and "technical writers" shall include all remaining plaintiffs in this action, as enumerated in paragraph 2 above.

8. At all times relevant to this action, each of the plaintiffs performed work that was nonexempt under the FLSA.

9. During all times relevant to this action, AEP has classified all of the plaintiffs as exempt employees under the FLSA.

10. In the early 1990's, AEP established the position of technical writer. At the time AEP established the position, AEP had a substantial human resources department and in-house legal counsel. AEP's management was aware of the provisions of the FLSA.

11. AEP did not document the process, if any, by which it originally determined to classify the technical writer position as exempt from the FLSA.

12. Despite classifying its technical writers as exempt employees, AEP initially paid the technical writers time-and-a-half overtime in the form of straight-time overtime with a half-time bonus twice each year. However, shortly before beginning an extended shutdown, AEP changed its policy and ceased paying technical writers time-and-a-half overtime. A number of technical writers objected to this policy change and notified AEP of their objections.

13. AEP has presented no credible evidence that, apart from defending this action, it ever undertook to determine in good faith whether its original classification of the technical writer position as exempt was correct.

14. The plaintiffs have each worked in excess of 40 hours in at least one workweek while employed by AEP, without being paid one and one-half times their regular hourly rate for each such hour of overtime. AEP has paid the plaintiffs for certain overtime hours at their regular hourly rates.

15. The parties have stipulated to the amount of the technical writers' unpaid overtime compensation through the date of trial as $216,583, broken down as follows: Southworth, $41,559; Dopp, $67,700; Piehl, $51,388; Jones, $20,083; and Hoepner, $35,853.

## CONCLUSIONS OF LAW

A. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 insofar as plaintiffs' claims are brought under the civil enforcement provision of the FLSA, 29 U.S.C. § 216(b).

B. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

C. AEP is an employer, as that term is defined in 29 U.S.C. § 203.

D. AEP is an enterprise engaged in commerce or in the production of goods for commerce as that phrase is defined in 29 U.S.C. § 203.

E. Plaintiffs are employees, as that term is defined in 29 U.S.C. § 203.

F. The FLSA makes it unlawful for a covered employer to employ an individual "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess [of 40 hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

G. The FLSA provides certain statutory exemptions from the overtime pay requirements. See 29 U.S.C. § 213(a)(1). With respect to the claims of the technical writers in this action, only one exemption was at issue: that for persons "employed in a bona fide . . . administrative . . . capacity[.]" 29 U.S.C. § 213(a)(1).

H. The technical writers working for AEP are not exempt from the overtime provisions of the Act. In its January 25, 2005 ruling, the court concluded as a matter of law that the technical writers were entitled to summary judgment in their favor on the issues of liability and affirmative defenses.

I. AEP failed to pay the technical writers overtime as required by the Act. AEP therefore violated the FLSA.

J. In order to recover under the Act, a plaintiff must prove that "he has in fact performed work for which he was improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187 (1946), *superseded by statute on other grounds as stated in* Carter v. Panama Canal Co., 463 F.2d 1289, 1293 (D.C. Cir. 1972). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id., 328 U.S. at 687-688. If the employer fails to product such evidence, the court may then award damages to the employee, even though the result be only approximate." Id. at 688.

K. The Act specifies that "[a]ny employer who violates the provisions of [section 207] of

5

this title shall be liable to the employee or employees affected in the amount of their unpaid . . . overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Although the parties have reached a stipulation regarding the amount of plaintiffs' unpaid overtime compensation, plaintiffs are seeking liquidated damages.

L.  Section 216(b)'s provision for liquidated damages is "compensatory, not punitive in nature," intended "to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991) (citation omitted), cert. denied, 503 U.S. 936 (1992).

M.  Despite the "mandatory language" of 29 U.S.C. § 216(b) with respect to liquidated damages, "Congress has provided courts with some discretion to limit or not award liquidated damages." Martin, 940 F.2d at 907. Specifically, 29 U.S.C. § 260 provides in pertinent part as follows:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

N.  "Double damages are the norm, single damages the exception," and the burden is on the employer to overcome what is in effect a presumption that the full amount of liquidated damages will be awarded. Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986). The employer's burden is a substantial one. Elwell v. University Hosp. Home Care Serv., 276 F.3d 832, 840 (6th Cir. 2002). Before a court may exercise its "sound discretion" to deny or limit liquidated damages, the employer "must show good faith and reasonable grounds" that it would be unfair to impose more than a compensatory verdict. Martin, 940 F.2d at 907 (citations

6

omitted).  This is a two-fold requirement:

> The good faith requirement is a subjective one that 'requires that the employer have an honest intention to ascertain and follow the dictates of the Act.'  The reasonableness requirement imposes an objective standard by which to judge the employer's conduct.

Williams v. Tri-County Growers, Inc., 747 F.2d 121, 129 (3d Cir. 1984) (citations omitted); see also Bratt v. County of Los Angeles, 912 F.2d 1066, 1071 (9th Cir. 1990) ("The statutory requirement of good faith and reasonable grounds establishes a test with both subjective and objective components"), cert. denied, 498 U.S. 1086 (1991).  Before a court exercises its discretion, it must make findings both that the employer acted in good faith, and that it acted with reasonable grounds.  Elwell, 276 F.3d at 840; Martin, 940 F.2d at 907; Williams, 747 F.2d at 129.  "If the employer fails to satisfy both requirements, the court lacks discretion to deny liquidated damages."  Williams, 747 F.2d at 129; see Shea v. Galaxie Lumber & Const. Co. Ltd., 152 F.3d 729, 733 (7th Cir. 1998) (statute "makes liquidated damages mandatory unless the district court finds that the defendant-employer was acting in good faith and reasonably believed that its conduct was consistent with the law").

    O.  To carry its burden of demonstrating good faith, "a defendant employer must show that [it] took affirmative steps to ascertain the Act's requirements[.]"  Martin, 940 F.2d at 908; see also Martin v. Indiana Michigan Power Co., 381 F.3d 574, 586 (6th Cir. 2004) ("the good faith requirement imposes an affirmative burden").  However, even where the employer satisfies its burden of showing good faith and reasonable grounds, "the District Court nevertheless may award full liquidated damages equal to, and in addition to, the unpaid back wages."  McClanahan v. Mathews, 440 F.2d 320, 323 (6th Cir. 1971); see York v. City of Wichita Falls, Texas, 763 F. Supp. 876, 883 (N.D. Tex. 1990) ("Congress has authorized courts to award up to the full sum of

7

liquidated damages notwithstanding an employer's demonstration of good faith and objective reasonableness").

  P. The court concludes that AEP has not satisfied its burden under 29 U.S.C. § 260 to prove both subjective good faith and objective reasonableness either before or after plaintiffs filed their complaint in this action.

  Q. AEP has attempted to satisfy its burden by showing that it followed a "careful process" in classifying plaintiffs as exempt employees. However, the court concludes that although AEP has shown that it followed a standard process in creating the technical writer position, AEP has not shown through credible evidence how it determined that its classification of the position as exempt complied with the FLSA. Instead, the credible evidence indicates that the position was originally classified as exempt by a person or persons who were not familiar with the requirements of the Act.[1]

The evidence shows that after AEP created the technical writer position, it subsequently periodically reviewed both the technical writers' job descriptions and their on-the-job performance. However, the evidence does not show that AEP relied upon this information to reconsider its original classification of the position as exempt, even when it decided to change its overtime pay policy. Further evidence that AEP has not acted in good faith is its failure to re-examine the technical writers' classification even after being put on notice that these employees

---

[1] At trial, the court conditionally admitted some evidence offered by AEP, subject to a ruling on admissibility. This evidence included the testimony of witness Fred Menigat, portions of the deposition of Brian Farrington, and proposed exhibits W, X, Y, Z, CC through JJ, and LL through PP. The court has determined to admit the testimony of Mr. Menigat, but deny admission of the offered portions of the Farrington transcript, which were not timely designated in the Final Pretrial Order. In addition, the court has determined to admit exhibits W, X, Y, Z, DD through JJ, and LL through PP. The court has determined to deny admission of exhibit CC.

believed they were misclassified.

  R.  AEP contends that after plaintiffs filed this lawsuit, AEP relied on a telephone survey it conducted of other nuclear power plants to determine whether or not to re-classify plaintiffs as exempt.  However, AEP has submitted no evidence that its telephone survey included a comparison of the day-to-day job duties of AEP's technical writers with those employed in equivalent positions at the other nuclear power plants.  The court therefore concludes that it was not reasonable for AEP to rely on this survey in determining to retain its technical writers exempt status.

  S.  AEP also attempts to satisfy its burden of establishing good faith and objectively reasonable conduct for the period between the filing of this lawsuit and the time of trial by showing that it relied on expert opinions in determining not to change plaintiffs' classification as exempt.  However, the evidence shows that the two experts on which AEP now claims to rely were retained by AEP's outside counsel solely to support AEP's position in this litigation.  The experts were not retained because AEP wanted to determine in good faith whether plaintiffs should be reclassified.  In addition, there is no indication that any AEP employee with authority to alter plaintiffs' exempt classifications reviewed the reports until years after the reports were prepared.

  T.  Even if AEP had shown that it took affirmative steps to ascertain the Act's requirements before classifying the plaintiff technical writers as exempt, and even if AEP had shown that it was aware of a continuing duty to examine plaintiff's classification, the court would be inclined to award full liquidated damages equal to the unpaid back wages.  This action has, for various reasons, been pending over a long period of time.  As noted above, liquidated damages

9

are "compensatory, not punitive in nature," intended "to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." Martin, 940 F.2d at 907.  Because liquidated damages are a form of compensation and do not represent a penalty or punishment, and because AEP has had the opportunity at a number of junctions to change plaintiffs' exempt classification but has declined to do so, fairness requires that plaintiffs be awarded the full amount permitted by law.

U.  The court concludes that AEP has not shown that it had reasonable grounds to believe that its classification of plaintiffs as exempt did not violate the FLSA.  Therefore, the court concludes that plaintiffs are entitled to liquidated damages in the amount of $ 216,583, which represents an amount equal to the overtime compensation unlawfully withheld. Plaintiffs are therefore entitled to entry of judgment against AEP in the amount of $ 433,166.

V.  Section 17 of the FLSA, 29 U.S.C. § 217, authorizes district court to restrain violations of the Act.  "The purpose of issuing an injunction against future violations is to effectuate general compliance with the Congressional policy of abolishing substandard labor conditions by preventing recurring future violations." Martin v. Funtime, Inc., 963 F.2d 110, 113 (6th Cir. 1992).  "The imposition of an injunction is not punitive, nor does it impose a hardship on the employer 'since it requires him to do what the Act requires anyway – to comply with the law.'" Id. at 114 (citation omitted).

W.  Where there has been a clear violation of the FLSA and regulations, "there should be assurance that the offending party will in the future voluntarily comply with the Act." Wirtz v. Flame Coal Co., Inc., 321 F.2d 558, 560 (6th Cir. 1963).  Absent such assurance, an injunction should be issued.  Id.  The public interest justifying injunctive relief "is reflected by national

policy expressed by Congress in the Act[.]" Id. In determining whether to issue an injunction under the FLSA, the court must consider both the previous and current conduct of the employer, in addition to the dependability of the employer's promises for future compliance. Reich v. Petroleum Sales, Inc., 30 F.3d 654, 656 (6th Cir. 1994). "The most important factor is the likelihood that the employer will comply with the Act in the future." Id."

X. AEP has not assured the court that it will voluntarily comply with the FLSA in the future with regard to plaintiffs' classification as exempt employees. Instead, AEP has through its conduct shown that it is not presently in compliance with the Act, insofar as it has not reclassified plaintiffs as exempt notwithstanding the court's conclusion, in its summary judgment ruling, that plaintiffs were not exempt. Under the circumstances, the court concludes that plaintiffs are entitled to injunctive relief.

Y. Plaintiffs seeks an award of attorney fees. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that the court, in an action filed under the statute, "shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." "The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir.) (quoting United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co., 732 F.2d 495, 502 (6th Cir. 1984)), cert. denied, 513 U.S. 875 (1994). "An award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory[.]" Fegley, 19 F.3d at 1134 (citation omitted). The court therefore concludes that the technical writer plaintiffs are as a matter of law entitled to an award of their reasonable attorney

fees for maintaining this action.

Z.  The court concludes that the technical writer plaintiffs, as prevailing parties against AEP, are also entitled to an award of costs pursuant to Fed.R.Civ.P. 54(d)(1).

## CONCLUSION

Based on the foregoing, the court orders as follows:

1.  A judgment for overtime compensation will be entered in favor of plaintiffs and against defendant AEP in the amount of $ 433,166, as follows:

| | |
|---|---|
| William Southworth | $ 83,118 |
| Lloyd Dopp | $ 135,400 |
| Robert Piehl | $ 102,776 |
| Edward Jones | $ 40,166 |
| Steven Hoepner (Barbara Hoepner) | $ 71,706 |

2.  The judgment will include an injunction enjoining future violations of the Act against those plaintiffs still employed by AEP.

3.   Claims for costs and attorneys' fees shall be made in accordance with Fed.R.Civ.P. 54(d).

Entered this 8th day of June, 2006.

                                                   /s/ Wendell A. Miles
                                                 Wendell A. Miles, Senior Judge