UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURT RENFRO,
WILLIAM SOUTHWORTH,
RICHARD PETERSON, and
JAMES FITCHUK, individually
and as Class Representatives on
behalf of other persons similarly
situated,

       Plaintiffs,

v

INDIANA MICHIGAN POWER
COMPANY,
d/b/a AMERICAN ELECTRIC POWER,

       Defendant.
_____/

Case No. 1:99-cv-877

Hon. Wendell A. Miles

OPINION AND ORDER ON TECHNICAL WRITER PLAINTIFFS' MOTION
FOR ATTORNEY FEES

This is an action filed under the overtime pay provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* On June 8, 2006, the court entered its Judgment awarding certain plaintiffs, known as the "technical writers," a total of $ 433,166, representing equal amounts of unpaid overtime compensation and liquidated damages. The matter is currently before the court on the Technical Writer Plaintiffs' Motion for Attorney Fees and Costs (docket no. 325). Defendant Indiana Michigan Power Company, d/b/a American Electric Power ("AEP") has filed a brief in opposition to the motion (docket no. 335).

For the following reasons, the court awards plaintiffs attorneys' fees in the amount of $111,093.55 to be paid by defendant AEP as follows: $104,732.80 to law firm of Law, Weathers & Richardson , and $6,360.75 to the law firm of Clark Hill.

**DISCUSSION**

The prevailing technical writers – Lloyd Dopp, Steven Hoepner, Edward Jones, Robert Piehl, and William Southworth– are five of the 52 plaintiffs who have been joined in this action. (One of the technical writers, Steven Hoepner, is now deceased, and his widow, Barbara Hoepner, has been substituted in his place.)   The technical writers seek attorney fees totaling $508,707.90 and taxable and nontaxable costs of "not less than" $37,806.70.  The bulk of the attorney fees ($495,763.65) and all of the costs sought are for services performed and expenses incurred by the Law, Weathers, & Richardson law firm ("LWR"), which represented plaintiffs until after the trial on liquidated damages.  The remaining attorney fees sought ($12,944.25) are for services performed after plaintiffs' counsel left LWR and joined the Clark Hill firm in 2006.

In its Findings of Fact and Conclusions of Law entered on June 8, 2006 (docket no. 321), the court has already concluded that the technical writers are as a matter of law entitled to their reasonable attorney fees in maintaining this action.  Id. at 11-12, ¶ Y.  Moreover, as prevailing parties, the technical writers are also entitled to recover costs other than attorney fees. Fed.R.Civ.P. 54(d).  The question is, therefore, the amounts to which they are entitled.

A reasonable attorneys' fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys.  Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548 (1984).  The starting point for determining the amount of reasonable attorneys' fees is to establish the "lodestar."  This figure is computed by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983); Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995).  Although other considerations may result in an upward or downward adjustment of the fee, Hensley, 461 U.S. at 434, 103 S.Ct. at

1940; Building Serv. Local 47, 46 F.3d at 1401-02, the lodestar is considered "the guiding light" of Supreme Court fee-shifting jurisprudence and, therefore, there is "a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]" City of Burlington v. Dague, 505 U.S. 557, 562, 112 S.Ct. 2638, 2641 (1992) (citation omitted).

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. "The applicant should exercise 'billing judgment' with respect to hours worked, . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Id., 461 U.S. at 437, 103 S.Ct. at 1941. "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" Id., 461 U.S. at 434, 103 S.Ct. at 1939-1940. "'Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'" Id. (emphasis in original; citation omitted).

"Under the Hensley analysis, the attorney seeking compensation retains the burden of documenting the number of hours spent on the case and of maintaining records in a way that would allow a court to determine how much time was spent on each claim." Moore v. Freeman 355 F.3d 558, 566 (6th Cir. 2004) (citation omitted). This burden requires the fee applicant to maintain records to show the time spent on different claims, and the general subject matter of the time expenditures should be set out with sufficient particularity so that the court can assess the time claimed for each activity. American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (applying 42 U.S.C. § 1988). Where the documentation of hours is inadequate, the court may reduce the award accordingly. Hensley, 461 U.S. at 433, 103 S.Ct. at 1939.

The court concludes that the documentation accompanying the fee application, viewed in light of all the circumstances of this case, is inadequate. Specifically, much of the material submitted in support of plaintiffs' request is deficient insofar as it does not provide the court with the information in a form in which the court can conduct a meaningful review of the reasonableness of the majority of the fees requested. Plaintiffs' counsel has submitted what they contend are their "complete billing records related to this matter." Brief in Support of Technical Writer Plaintiffs' Motion for Attorney Fees and Costs at 5. However, although the Clark Hill records appear to be complete, the LWR records are seriously deficient in a number of substantive respects.[1]

First, the LWR billing records are deficient insofar as many of the time entries are incomplete on their face. Specifically, the descriptions of the services performed for each time entry in many instances cut off abruptly in mid-phrase, as though software which might have been used in compiling the records was inadequate to accommodate complete descriptions.[2] It is difficult to believe that counsel would send a bill to a client containing partial entries of the type

---

[1] Much of the LWR supporting materials are also deficient in form as well as in substance. Specifically, Exhibit A to the Declaration of Michael J. Roth, which is identified as LWR's billing records, consists of 23 pages of single-space print of approximately 6 point type, with margins of 3/8 inch or less. However, W.D. Mich. Local Rule 10.1 requires all papers filed to be double-spaced, with print no smaller than 12 point type and margins of at least one inch. The LWR billing records are reproduced in print that is very small – half the size required for court records – as well as difficult to read. In addition, the single-space print and lack of sufficient margins have made it virtually impossible for the court to make notations on the records as it reviewed them.

[2] Many descriptions contain partial sentences or phrases which terminate abruptly, i.e., "Attention to various issues related to joint" or "Phone conference with K. Renfro; Attention to." It is stressed that the billing records submitted for work performed by the Clark Hill law firm do not suffer from the same deficiencies as those submitted for work performed by the Law, Weathers, & Richardson law firm. The former records are adequate; the latter records are not.

provided to the court with the fee application.   The records should not have been provided to the court in their current condition.

Next, the LWR billing records are also deficient insofar as most of the entries (which are incomplete as noted above) do not distinguish between time spent on behalf of the successful plaintiffs and time spent on the claims of other plaintiffs who did not succeed in this action.   The LWR records indicate a total of 3,272.90 hours of service by various persons in this case from June 8, 1999 through June 15, 2006.   The supporting Declaration of Michael J. Roth confirms that fees and costs for all plaintiffs in this action were combined for billing purposes.  Plaintiffs' Exhibit 1, ¶ 3.

Recognizing that some of counsel's time entries pertain solely to plaintiffs who are not prevailing parties in this action, the technical writers have, in their motion, argued that counsel have, "to the best of their ability," excluded from the fee request those time entries which pertain solely to the non-prevailing plaintiffs.  Brief in Support of Technical Writer Plaintiffs' Motion for Attorney Fees and Costs at 5.  That this exclusion was performed after the fact and not contemporaneous with the original time entries is made apparent by billing entries which contain numerous references to both prevailing and non-prevailing plaintiffs.   Many of the LWR billing entries submitted to the court either expressly or implicitly relate to the claims of non-prevailing plaintiffs.[3]

According to attorney Roth's declaration, $104,350.10 of LWR's attorneys' fees, or

---

[3] Examples of entries which expressly relate to a non-prevailing plaintiff or plaintiffs are the following: "Phone conference with K. Renfro; Attention to" (entry dated July 12, 1999) and "Drafting of correspondence to planners;" (entry dated February 1, 2002).  An example of an entry which implicitly relates to non-prevailing plaintiffs is "Drafting of Stipulation and Order to dismiss" (entry dated November 30, 2001).  Because it is clear that none of the prevailing plaintiffs' claims were dismissed, this entry could refer only to non-prevailing plaintiffs.

approximately 20 percent – relate solely to the claims of the technical writers. Although counsel has submitted exhibits in chart form (Plaintiffs' Exhibits 1-C and 1-D) which purport to allocate between time spent on the technical writers' claims and time spent on other plaintiffs' claims, no explanation is given – either in the accompanying declaration or on the charts themselves – regarding how these allocations were made.[4] Moreover, because the time entries themselves (Plaintiffs' Exhibit 1-A) are incomplete, they are of little help to the court in determining counsel's rationale for each the after-the-fact allocation.

      Here, plaintiffs have provided the court with LWR's itemized, albeit incomplete contemporaneous time records. However, as noted above the time records in large part do not distinguish between the prevailing and non-prevailing plaintiffs. Although plaintiffs argue that they have reduced their fee request to account for work relating to the non-prevailing plaintiffs, this cannot be confirmed based on the supporting materials they have provided with their motion. That the after-the-fact effort to separate time entries has been at least partly unsuccessful is evidenced by the fact that despite certain "reductions" which counsel has attempted to make, some of the entries for which reimbursement is sought clearly relate to non-prevailing plaintiffs. Moreover, because many of the entries are incomplete, it is not possible to determine which activities benefitted the prevailing plaintiffs or what specific activities were involved in the services provided. Because the court has serious doubts about the accuracy of the ex post facto reductions of billing entries attempted on behalf of the technical writers, the court cannot

---

[4] The charts themselves (Plaintiffs' Exhibits 1-C and 1-D) list billing entries in terms of amounts billed, rather than time billed per entry. Therefore, determining the time adjustments proposed by the charts requires cross-reference to hourly rates in effect for each billing individual on the date in question. However, as noted below, the qualifications of a number of the billing individuals have not been provided.

conclude that the hours claimed are reasonable.

Even if the LWR billing entries submitted reflect time reasonably spent on the claims of *all* plaintiffs (prevailing and not), the claimed hours – even with counsel's attempted reductions – become unreasonable when pertaining only to the claims of the technical writers. Attorneys' fees need not always be proportionate to the size of a damage award. See City of Riverside v. Rivera, 477 U.S. 561, 578, 106 S.Ct. 2686, 2696 (1986) ("A rule of proportionality would make it difficult, if not impossible," for individuals with meritorious claims but relatively small potential damages to obtain redress from the courts) (applying 42 U.S.C. § 1988). However, time spent litigating individual damage claims of plaintiffs who did not receive damages cannot be compensated where the applicable fee-shifting statute provides attorneys' fees only for prevailing plaintiffs. See Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1173 (6th Cir. 1990) (applying 42 U.S.C. § 2000e-5(k)). In such instances, "[t]he guiding principle is that the work must in some way have been expended in pursuit of a successful claim[.]" Id. at 1175. Here, five plaintiffs achieved virtually complete success. However, 47 other plaintiffs achieved no success whatsoever, and time spent on their claims cannot be charged to AEP.[5]

If plaintiffs contend that some of the theories and/or proofs against AEP overlapped for the different categories of plaintiffs, they should have explained how this is so in order to justify how time which appears to have been expended on the claims of a non-prevailing plaintiff or plaintiffs benefitted the claims of the technical writers. The documentation provided by plaintiffs on behalf of the LWR firm does not identify the rationale for how hours were apportioned to the

---

[5]Although the fee-shifting provision of the FLSA does not mention "prevailing party," courts have typically cited prevailing party-fee shifting jurisprudence in FLSA cases. Saizan v. Delta Concrete Products Co., Inc.. 448 F.3d 795, 799 n.7 (5th Cir. 2006).

claims of the technical writers, and therefore does not substantiate the hours claimed in support of that portion of the fee request.

What is important is that the documentation and other supporting materials presented in support of the fee application reflect the use of billing judgment. See Hensley, 461 U.S. at 434, 103 S.Ct. at 1940 ("In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here.") (citation omitted). Because it is contended that the LWR billing entries provided represent the firm's complete billing records for this case, the court assumes that the firm did not prepare actual bills. However, what is required in order for the court to determine the lodestar is adequate documentation, not bills. The party seeking attorneys' fees is charged with the burden of showing the reasonableness of the hours billed and, therefore, is also charged with proving the exercise of billing judgment, which requires documentation not only of the hours actually expended but also of the hours written off as unproductive, excessive, or redundant, or – in this case – not directly related to the claims of the party seeking the award. See id., 461 U.S. at 434, 103 S.Ct. at 1939-1940; see also Saizan v. Delta Concrete Products Co., Inc.. 448 F.3d 795, 799 (5th Cir. 2006) ("Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant"). With regard to each time entry, counsel should ask themselves: "Would I bill this particular client for this service?" If the answer is "no," then counsel may not reasonably expect the court to charge that expense to the non-prevailing party. If the answer is "yes," then the rationale for this conclusion must be explained to the court, particularly where it is not apparent from the time entries themselves.

AEP urges the court to resolve the lack of proper documentation by simply adopting one of two methods of reduction. Because the case as originally filed included plaintiffs employed in

three separate job classifications (planners, nuclear specialists, and technical writers), AEP argues that the court should consider reducing LWR's claimed hours by 2/3, or 66 percent, to account for the fact that plaintiffs in only one of the three job classifications prevailed. Alternatively, AEP argues that the court should consider reducing LWR's claimed hours by 47/52, or 90 percent, to account for the fact that only five of the 52 plaintiffs who joined in the action actually prevailed.[6]

"The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." Saizan, 448 F.3d at 799 (footnote omitted). In addition, as the court has already noted above, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433, 103 S.Ct. at 1939; see also Action on Smoking and Health v. Civil Aeronautics Bd., 724 F.2d 211, 220 (D.C. Cir. 1984) ("In most cases, . . . deficiencies in documentation are cause for reduction rather than outright denial of fees") (footnote omitted). Therefore, the court will reduce the total hours for which entries were made by LWR personnel – 3,272.90 – by 90 percent in order to account not only for the deficiencies in documentation but also for the fact that  the five prevailing technical writers

---

[6]AEP also argues that the court should either disallow entirely or reduce those hours claimed for any time after September 29, 2003, after the court issued a ruling on attorneys' fees in another FLSA case against AEP, Martin v. Indiana Michigan Power, No. 1:00cv218, docket no. 130 (Sept. 29, 2003). In that ruling, the court was critical of LWR's record keeping. Although the same criticisms could be leveled in this case, the court rejects any suggestion that it should devote greater scrutiny to LWR entries dated after September 29, 2003. A fee applicant bears the burden of documenting the appropriate hours during all phases of the case for which fees are claimed.  The court does not view the ruling in Martin as providing a basis for an award in this case which differentiates between time spent on the matter before and after the date of the Martin ruling.  Indeed, if any particular date is relevant in this case for documentation purposes, it is most likely the date on which the technical writers became the only plaintiffs remaining in the case.

comprise only 10 percent of the participating plaintiffs.  This results in 327.29 hours reasonably expended on the technical writers' claims by personnel at LWR.

Plaintiffs seemingly argue that the Sixth Circuit case of Paschal v. Flagstar Bank, 297 F.3d 431, 434 (6th Cir. 2002) approved an "approach" to documentation of fee applications in which fees and costs may be claimed or awarded for non-prevailing parties so long as the work performed or costs incurred could have been claimed even if the non-prevailing parties had not been part of the case.  Brief in Support of Technical Writer Plaintiffs' Motion for Attorney Fees and Costs at 5.  However, Paschal does not approve of any such approach to documentation.  In that case, the plaintiffs submitted, as part of their request for attorney fees, a total of 38 pages of descriptive billing entries for two different attorneys.  Plaintiffs' counsel in that case also submitted an affidavit confirming that the billing statements only included attorneys' fees and costs incurred on behalf of the successful plaintiffs, who included only two of eight sets of plaintiffs who originally filed the mortgage-lending discrimination lawsuit.  The defendant failed to point to any specific entries which would create doubt about the veracity of counsel's sworn affidavit.  Id.  In contrast, as noted above, in this case there are numerous incomplete entries, as well as entries which either expressly or implicitly relate to non-prevailing plaintiffs.

In contrast with the LWR billing entries, the Clark Hill billing entries reflect time spent only on the technical writers' claims.[7]  However, the some of the entries for work performed at Clark Hill appear to be a sole product of the transfer of the technical writers' files.  Although it is not particularly unusual for time to be spent on a matter by multiple attorneys or firms, nor is it

---

[7]The Clark Hill billing entries indicate that the technical writers' files were transferred to the firm.  The entries contain no reference to any other plaintiffs' files having been the subject of work performed by plaintiffs' attorneys after they became employed by Clark Hill.

unusual for attorneys to make a career change during litigation, a fee award must reflect the customary practice of multiple-lawyer litigation.  Barnes, 168 F.3d at 432.  Here, the fact that two of plaintiffs' attorneys changed firms late in the case appears to have resulted  in redundant time having been devoted to administrative matters connected with the transfer of the technical writers' files to the new firm.  In addition, the court concludes that some time should be deducted for preparation of an unsuccessful motion by the technical writers to alter or amend the judgment.  Therefore, the court concludes that an adjustment needs to be made to the hours claimed by Clark Hill.  Instead of the 36.20 hours claimed, the court concludes that 26.75 hours were reasonably expended by the firm.[8]

Computation of the lodestar also requires the court to determine a reasonable hourly rate.  The fee applicant's burden includes supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Barnes, 168 F.3d at 427. In determining the appropriate level of compensation for each category of service, the court must look to the fair market value of the services provided.  Northcross v. Board of Educ. of the Memphis City Schools, 611 F.2d 624, 638 (6th Cir. 1979).  An attorney's normal hourly billing rate should be a key focal point in this determination.  Kelly v. Metropolitan County Board of Educ., 773 F.2d 677, 683 (6th Cir. 1985).  In most communities, the marketplace has set a value for legal services, and the hourly rate charged by an attorney for his services will normally reflect the training, background, experience, and skill of the individual attorney.  Northcross, 611 F.2d at 638.

---

[8]The court has deducted the following time from the entries submitted on behalf of Clark Hill: 2.70 hours for April 10, 2006; .50 hours for May 11, 2006; .20 hours for May 12, 2006; .20 hours for May 25, 2006; 2.25 hours for June 20, 2006; 1 hour for June 21, 2006; and 1 hour and 1.6 hours, respectively, for separate entries on June 22, 2006.

Plaintiffs have requested compensation at various rates, depending on who performed the service and the year during which it was performed.  These hourly rates range from a high of $320 per hour for certain work performed in 2006 (for a member of the Clark Hill firm) down to a low of $40 (for certain work performed by an unidentified person at the LWR firm in 2001). Affidavits have been submitted indicating that the hourly rates requested were (and are) the respective individuals' standard hourly billing rates during the course of this action.  In addition, the qualifications of the attorneys performing the vast majority of the work in this action are detailed in counsel's affidavit.  AEP has not objected to these claimed hourly rates, except insofar as plaintiffs' two principal attorneys' rates increased after they joined the Clark Hill firm in 2006. (These attorneys' 2006 rates climbed from $290 and $195 per hour, respectively, at LWR, to $320 and $225 per hour, respectively, at Clark Hill.)   AEP argues that the Clark Hill work should be compensated at the same rate at the LWR rate.

According to attorney Roth's declaration, a total of 13 attorneys and eight paralegals from the LWR firm worked on this case.  However, the court has not been provided with the qualifications or experience of any of the following persons for whom time entries are listed in the LWR billing records: Barbara Gracki; Sarah Schraw; Steven Tjapkes; Cynthia Hosner; Kevin Krauss; James Wernstrom; Shari Brown; Monese Wandel; John Gretzinger; James Komondy; Doug Mileski; Angela Secor; David Centner; Kristen Campbell; and Lori Kosters.  As a result, the court cannot evaluate the reasonableness of the hourly rates charged for those persons. However, the court finds that the requested rates for the two principal attorneys who moved to the Clark Hill firm ($320 and $225, respectively) are reasonable and consistent with prevailing market rates for other Grand Rapids attorneys, notwithstanding AEP's objection that these attorneys should be limited to the hourly rates charged at the LWR firm.

Plaintiffs have also requested a fee enhancement of 50 percent of the lodestar amount. However, plaintiffs' supporting materials do not address any factors which might support an enhancement. Instead, plaintiffs' request for a 50 percent enhancement is addressed only in one and one-half pages of their brief in support. In their brief, plaintiffs argue for an enhancement based on the following: (1) counsel's "excellent" performance; (2) the "arduous and time consuming" marshaling of evidence; (3) the hourly rates requested are "modest," (4) the "undesirability" or "small" nature of the case; and (5) the delay in receiving payment. Brief in Support at 9-10.

In Blum, the Supreme Court clarified that the novelty or complexity of the issues presented and the quality of representation are presumably fully reflected in the lodestar and will rarely provide a basis for enhancement. 465 U.S. at 899, 104 S.Ct. at 1549. Novelty and complexity would appear to include the "arduous and time consuming" factor on which plaintiffs rely.[9] The Court in Blum also stated that "the 'results obtained' generally will be subsumed" within the lodestar amount and "normally should not provide an independent basis for increasing the fee award. 465 U.S. at 900, 104 S.Ct. at 1549-1550. More specifically, the Court further held in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 566, 106 S.Ct. 3088, 3099 (1986) that "overall quality of performance ordinarily should not be used to adjust the lodestar[.]" This is because "the lodestar includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal

---

[9]Even if the "arduous and time consuming" nature of the case could provide a basis for enhancement, plaintiffs do not indicate whether they considered the extent to which the inclusion of a total of 52 plaintiffs and three separate job classifications in the case accounts for this factor.

assistance." Id., 478 U.S. at 566, 106 S.Ct. at 3098.[10]

Although a lodestar enhancement is generally inappropriate absent evidence – and not mere argument – that the lodestar does not provide a reasonable fee, one of the factors cited by plaintiffs could potentially provide a basis for enhancement: a delay in receiving payment. An enhancement for delay is an appropriate factor in the determination of what constitutes a reasonable attorneys' fee. Missouri v. Jenkins, 491 U.S. 274, 284, 109 S.Ct. 2463, 2469 (1989) (applying 42 U.S.C. § 1988). In order to supply a basis for enhancement based on a delay in payment, plaintiffs must present evidence which supports both the enhancement and its amount.[11] "Plaintiffs seeking a delay enhancement bear the burden of 'document[ing] the need for a [delay] multiplier.'" Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp., 995 F.2d 414, 425

---

[10]In support of their argument for a 50 percent enhancement, plaintiffs cite to Paschal v. Flagstar Bank, FSB, 297 F.3d 431 (6th Cir. 2002), in which the court affirmed an enhancement of approximately 50 percent based on the following:

> (1) the attorneys 'did an excellent job at trial,' (2) this case involved 'claims of discriminatory treatment in an area (residential mortgage lending) where discriminatory treatment is often difficult to prove,' (3) '[t]he marshaling of evidence was an arduous and time consuming task,' and (4) the hourly rates used to calculate the lodestar are relatively modest.

Id. at 436. Plaintiffs conclusorily argue that these same grounds support a fee enhancement in this case. However, Paschal merely held that the district court did not abuse its discretion in relying on the four enumerated factors as the basis for an enhancement. The case does not mandate an enhancement, nor does it approve of enhancement based not on evidence but on conclusory arguments contained in a brief. Indeed, in Blum, the Court reversed a 50 percent enhancement, where the record contained "no evidence supporting an upward adjustment" and counsel's affidavits did not claim, "or even mention, entitlement to a bonus or upward revision." 465 U.S. at 898, 104 S.Ct. at 1548. The Court, moreover, was critical of the lower court for accepting "conclusory reasons" advanced in a brief in support of the enhancement. Id.

[11]In Jenkins, that evidence established that the plaintiffs' attorney was precluded from accepting other employment during a three-year period and that he was obliged to borrow money to pay staff and other operating expenses, thereby incurring interest. 491 U.S. at 284 n.6, 109 S.Ct. at 2469 n.6.

(3d Cir. 1993) (citations omitted).

Although plaintiffs have failed to document the need for a specific delay multiplier in this case, the court nonetheless concludes that delay is an appropriate basis on which to apply a higher hourly rate in computing the lodestar for work performed by the LWR firm. In Jenkins, the Court affirmed an award of fees in the 10-year long case based on current rather than historic market rates in order to compensate for the delay in payment. 491 U.S. at 277, 109 S.Ct. at 2466. The current action was filed over seven years ago, and plaintiffs seek compensation for work done at LWR at the various hourly rates in effect at that firm over the years. The court finds that given the length of time this case has been pending, an hourly rate consistent with current market rates should be applied for the LWR work, instead of the firm's historic hourly rates.

The court has already determined that the requested hourly rates for the two principal attorneys who moved to the Clark Hill firm are reasonable, and the court also concludes that under the circumstances of this case the highest of these hourly rates – $320 – is also a reasonable hourly rate for the work performed by persons at the LWR firm, even though this rate was not actually billed by plaintiffs' attorneys at the LWR firm. The increased hourly rate of $320 is reasonable for work performed by all persons at the LWR firm, even though it equals the currently hourly rate charged by plaintiffs' most experienced principal attorney at his current place of employment, and even though much of the work at LWR was performed by less qualified and experienced persons. In reaching this conclusion regarding the reasonable hourly rate, the court has taken into consideration not only the fact of delay in payment, but also the fact that the court has already determined to reduce LWR's claimed hours by a substantial percentage. When one considers that it is likely that a more experienced person billing at higher rates is able to accomplish the same result in less time than a less experienced person billing at lower rates, it

15

is reasonable to apply the higher hourly rate to the greatly reduced number of hours.

Computation of the lodestar in this case therefore results in attorneys' fees of $104,732.80 (or 327.29 hours × $320 per hour) for the LWR firm, and attorneys' fees of $6,360.75 (or 23.15 hours × $225 per hour, plus 3.6 hours × $320 per hour) for the Clark Hill firm, for a total of $111,093.55.  The court has applied a current market hourly rate rather than the historic hourly rates billed by the LWR firm, and concludes that plaintiffs have documented no basis for adjustment to the lodestar amount for the work done by that firm, insofar as the lodestar already takes into consideration delay in receiving payment.  Moreover, because the Clark Hill firm only recently became involved with this matter due to the employment change of plaintiffs' two principal attorneys, the court concludes that no adjustment to the lodestar based on delay is warranted for the work done by that firm.  The court concludes that plaintiffs have not rebutted the presumption that the lodestar amounts, as computed herein, in combination represent a reasonable attorneys' fee for representation of the five prevailing technical writers in this case.

## **CONCLUSION**

The court hereby orders that AEP shall pay reasonable attorneys' fees incurred on behalf of the technical writer plaintiffs in the amount of $111,093.55, as follows: $104,732.80 to the law firm of Law, Weathers & Richardson, and $6,360.75 to the law firm of Clark Hill.

The matter of plaintiffs' costs will be the subject of a future decision.

Ordered this 16th day of February, 2007.

       /s/ Wendell A. Miles
Wendell A. Miles, Senior Judge